It is axiomatic in patent law that all claimed terms in a patent are important and presumed to have meaning. A narrow exception is non-functional pruned matter. That exception does not apply to the computer apparatus and method claims of the present appeal. All claims on appeal recite particular data input signals used by the processor or processing to produce particular data outputs by an algorithm necessarily tailored to the particular data signals recited. The patent office ignored limitations describing attributes of this data relying on the pruned matter exception. This narrow exception does not apply to the claims of the instant appeal. Further, the patent office relied on an apposite pruned matter precedent and ignored the more applicable cases of this court including In Re Bernhardt and In Re Lowry. The three cases relied on by the patent office all relate to pharmaceutical inventions including claim limitations directed to actual pruned matter or at least oral instructions. None of these claims relied on by the patent office have anything to do with computer implemented systems or methods or their processing of data signals. The three cases relied on by the patent office include the 2004 In Re Nagai case of this court which was directed to the actual recitation of a pruned matter instruction sheet in an apparatus claim. The second case was King Farms in 2010 and in that case the claims were directed to a method of administering a drug and an instructional limitation of informing the patient to take the drug with food. Is your argument really that somehow pruned matter just can't apply in this context or is your argument that even if it does apply that you satisfy the minimal requirement? Yes, Your Honor. My argument is both. To my knowledge, this court has never applied and the solicitor has pointed to no case that applies pruned matter. The narrow pruned matter exception described in, for example, the Gulak case to computer implemented systems and methods that are the subject of the claims of the present application. So in that sense, I'm arguing that the pruned matter doctrine does not apply. Whether you call it a pruned matter doctrine or not, don't you still have to have patentable limitations? Absolutely, Your Honor. Of course the limitations must be patentable. But the limitations that are present in the claim and were expressly ignored by the Board of Appeals were limitations that described the data that was processed by the processor, which data was functional in that it affected the claim recites the valuation of property and the property cannot be valued without an understanding of what that property is. But how does the type of the data relate functionally to the method that you're reciting? The claim requires controlling the processor to compute evaluation of the property. The data describes the property and what the board did was ignore the meaning of the data and, in fact, what the property was. So that the board literally held that any input signal processed by any processor to produce any output signal was sufficient to reject the claim. I submit that when an algorithm is modified, it produces a new machine. This court has consistently held that changing the programming of a digital computer produces a new machine. And the data that is valued affects the method evaluation and, therefore, is directed to a new machine. And those limitations were totally disregarded by the Board of Appeals in this matter. So the Gulak decision argued or noted that the board cannot dissect a claim, excise the printed matter from it, and then declare the remaining portion of the mutilated claim to be unpatentable. The claim must be read as a whole. But that's precisely what the Board of Appeals did in this matter, Your Honors. So none of the cases applied by the Patent Office are even analogous to the present appeal and do not suggest the expansion of the narrow exception of printed matter to a computer implemented system or method. So the Patent Office effectively asks this patent to recast the printed matter exception to cover these computer implemented systems and methods and their processing of data signals. Are you arguing that Claim 1 is representative of all the claims, including Claims 10 and 20? Well, each of the claims has slightly different limitations, Your Honor. And the Board of Appeals applied a slightly different rejection than was applied by the examiner. And so I would argue that Claims 1 and 10 stand alone, but both claims recite a processor or a step of processing to compute evaluation of an interest in property. And that property is a specific form of property, and that specific form of property which necessarily affected the operation of the processor and necessarily affected the evaluation was wholly disregarded by the Board of Appeals. So the Patent Office completely ignores the most relevant holdings in this case, the In re. Bernhardt and In re. Lowry cases. Bernhardt was never even mentioned by the solicitor in the solicitor's briefs. It found that printed matter cases have no factual relevance. When the invention is defined by the claims, it requires the information to be processed, not by the mind, but by a machine, the computer. Bernhardt states, if a machine is programmed in a new and an obvious way, it is physically different from the machine without the program. Its memory elements are differently arranged. The fact that these physical changes are invisible to the eye should not tempt us to conclude that the machine has not been changed. I submit that the limitations disregarded by the Board expressly recite a different machine and that those limitations should not be disregarded. But a lot of the limitations that you're referencing don't really appear in Claim 1, do they?  Claim 1 recites, first of all, the receipt of a particular type of input signal. And that input signal is data associated with a fractional interest in property. And the property here is the important part and the part wholly disregarded by the Patent Office. The property includes an interest in only one, but not both, of a contingent equity interest in real estate that is a primary equity interest, and a corresponding contingent equity interest in real estate that is a secondary equity interest. That's a particular type of property completely disregarded in the Board's decision. The claim goes on to require the processor controlling the processing to compute a valuation of this interest and providing a financial analysis output including valuation. So to ignore what the data is at the input of the process ignores how the processor must act and therefore makes the claim an abstract that is not reflective of the invention that the inventors sought to be patented. So I submit that disregarding these terms is an error and it should be reversed by this Court. What about the 101 issue? I know that your motion to remand was denied because you had already raised these issues or you raised these issues in your reply read regarding the need to remand. But you just argued generally that there was a need to remand on 101 because there was lots of fact-finding that needed to be done. What kind of fact-finding would need to be done for us to determine whether this is patentable subject matter? Well, Your Honor, first of all, the patent is its own practice. If the Board had decided a new ground of rejection under 101, would have afforded the applicant the opportunity to go back before the examiner and present evidence, arguments, or even claim amendments to overcome the rejection. And that is 37 CFR 41.50 is the rule. So what the solicitor is doing here is asking you to do something that the Board would not do. We've done it before. And maybe in fairness, we shouldn't do it without giving you an opportunity to brief the issue in more detail. But what I'm trying to understand is would that just be a legal argument or would there actually be factual determinations that would need to be made? Well, I think there will be factual determinations that need to be made. Well, the solicitor argues that all of the claims are directed to an abstract idea of calculating the monetary value of a piece of property. That's from the solicitor's brief. The invention of the present application is substantially more than that. It is directed to the securitization of property by decomposing the property into at least two components and calculating the value of one or more fractional interests in only one of those components. And the facts underlying the scope of that difference are important facts to develop. What types of facts would be – I didn't really understand the difference. It seemed to me your characterization was simply saying securitization is the utility of the invention as opposed to a difference in the description of what the invention actually does. But what sort of facts would need to be determined? Well, for one thing, Your Honors, there hasn't been a full and fair consideration of what the abstract idea is here. And in the Alice case, Justice Thomas refers to underlying factual observations in ascertaining what the abstract idea is. What would you say that the abstract idea here is? Well, I don't think there is an abstract idea here, Your Honor. Had this come up at all before the board? Before Alice, there were Bilski and other cases that turned on 101. Your Honor, the Board of Appeals did not have the 101 issue before them. Of course, they had the power to apply a new ground of rejection under the section I just previously mentioned. But no, the issue was not fully – was not even remotely considered at the Board of Appeals level at the Patent Office. And I just want to also note that there are 53 claims pending in this application. Each of those claims needs to be considered. They certainly were – there was never an argument presented with respect to the 101 issue. And, you know, frankly, I can't tell you if there are facts with respect to one of those claims that are different from facts with respect to another one of those claims. So I submit that the decision of whether there is a 101 issue here is not right for this Court. And I do think that this is different from the Kaminsky case. First of all, here the solicitor is asking you to do something that the Patent Office themselves would not have done. We appreciate that. Let's hear from the office. Let me save you a little bit of time. Thank you. Did the Board waive any issue of 101? Your Honor, the Board never applied Alice Corp in this case because, frankly, Alice Corp was decided after the Board entered its decision. There were cases before Alice? Alice did not come out of nowhere. It did not, but it provided substantial clarity to this area of the law. Well, what about Pilsky? Is this something that the Board chose not to apply or the examiner? Yes, the examiner chose not to raise it. Again, it was more difficult to apply Section 101 to claims like these before Alice Corp. And I should also note the only reason that the solicitors briefed this issue in this case is in recent decisions, this Court has expressed a preference that when it appears to the Director that a claim is ineligible under Section 101, that it brief the issue itself. Why did you resist a remand? I mean, if you really think it's such a strong issue, why didn't you just go back to the Board and say, you know what, this printed matter doctrine is kind of a strange area of the law and we don't use it a lot. Maybe we ought to go back and if we think we've got solid ground on 101, just agree to the remand. I'll concede that it's rare that we're confronted with claims like these where there's no functional relationship between the additional limitation and the structure of the method, but that does appear to the Director believes that are the facts in this case. What is the Office's position now? Do you propose you presented it in your brief ultimately? Do you propose that that issue is before the Court? Are you prepared to request a remand to consider it or do you waive it? Our position is that it's unnecessary to reach the issue. The claims were rejected by the Examiner and the Board under Section 103. So you're waiving it? Frankly, it's in the discretion of this Court whether to raise the issue. Again, the only reason the Director has briefed this issue is because this Court itself has expressed a preference that the issue be briefed. If it's waived, doesn't it require a remand so that the applicant has an opportunity to respond? It's been this Court's practice in cases where it's chosen to raise the issue at this late stage that it can decide the issue itself. The most instructive case on this question is In re Comiskey. That case applied the doctrine of the Supreme Court's decision in SEC v. Chenery Corporation that held that when an issue was brought to the Court of Appeals, the Court of Appeals had to make a decision. And you can find in Comiskey that the Court undertook, because there was a full exposition of the technology and the facts and all else, to render a decision. Here, your opponent reminds us of the number of claims, each with a different, presumably separately patentable, for consideration under 101. And the threshold question is the position of the Director of the Office in such a case where, in defense, you raise a new ground. The principal position of the Office is that the claims are invalid as obvious under Section 103, that Graf's recited property interest limitations, his primary and secondary contingent equity interest in real property bear no functional relationship to his underlying computer implemented method, and that the decision of the Board should be affirmed for that reason. So it's waived. It's entirely at the discretion of this Court whether to raise the issue. Again, the issue has only been briefed for the benefit of this Court. All right, proceed. So the principal argument being made by Appellant Graf is that the limitations at issue, the recited primary and secondary contingent equity interest in real property, determine the process. But Graf has pointed to and can point to nothing in the claim that depends in any way on that limitation. Do we need the printed matter doctrine to even get to where you want us to get to here in this case? Not printed matter per se. The printed matter cases just seem to be where this principle arises most frequently, where you have a type of limitation that's something that's intelligible and useful only to the human mind, and that there is no functional relationship to the structure. Yeah, I found the printed matter cases to be something of a red herring in this case. But I also found that there weren't any authorities that directly addressed the point that you're now making. Can you point us to anything that isn't a printed matter case, but nonetheless embodies the principle that you're articulating? Yes, the two leading cases from the Director's point of view are King Pharmaceuticals v. Eon Labs. Well, but that's pretty close to a printed matter. I recall it was an instruction. It was a method claim, so there actually was no tangible item at all. Right, but the method included instructing the patient as to the justification. Informing the patient about, yes, the relationship between the drug. So it's pretty easy to see why you would bring that within the umbrella of printed matter, don't you think? Frankly, Your Honor, it's the office's view that whether or not something constitutes printed matter is neither necessary nor sufficient to determine whether it is. So setting aside King, and I guess Cal, I think was a similar case, do you have any cases that's really not akin to printed matter or directly printed matter that we could look to for direction as to how to handle this question of functionally unrelated, as you argue? Well, frankly, both of those cases, King and Cal, were method cases where there was no tangible item at all and nothing that was word printed on a piece of paper. Not on a piece of paper, but they were words, nonetheless, that were directions or advice or information given to… Something that could have been… Right, it would be in its application contemplated to be either written or spoken. Frankly, in this case, what we have are real property interests, which are usually recorded by words printed on a sheet of paper in a deed or a contract or something of that sort. If the analogy extended that way to encompass cases like King and Cal, then it could certainly be extended here as well. But frankly, what's important is the underlying principle here, that when you have one of these rare cases where the process or structure is obvious and the only basis for distinguishing the prior art is some additional limitation, something that's intelligible and useful only to the human mind. And there's simply no functional relationship. The limitation doesn't depend on the underlying process and the process doesn't depend on the limitation. Then there's no functional relationship and that limitation cannot be the basis for distinguishing… So in Claim 1, what do you define as the underlying process? So the Claim 1 and all of the claims are basically similar. They're either a process or a computer program to implement the process. The three principal steps are inputting data, controlling the processor to calculate a value, and then outputting a result. And those appear throughout. And those three steps, there's nothing more. This isn't a case, for example, what you typically see in a computer-implemented invention like this. It's some type of equation or formula or algorithm that tells you how to process the data and that makes it relevant, frankly, to the additional limitation. Do you think there's a processing algorithm that appears in any of the dependent claims or in any of the apparatus claims? No. Claim 1 was treated as representative. In his brief in this court, Mr. Graf has made passing reference to Claims 10 and 20, but those claims were never argued before the board as a separate basis for patentability and are thus waived at this point. And in his briefing before this court, Graf never points to any type of formula or equation or anything that makes the structure that he recites, the process, dependent in any way on the type of real property limitation. Frankly, what this case very cleanly illustrates is the principle announced in King Pharmaceuticals that this rule requiring this functional relationship is necessary to prevent the indefinite patenting of known products through the simple addition of novel but functionally unrelated claim limitations. If Mr. Graf is correct that he could obtain a patent based on these claims, assuming other requirements of patentability are met, there would also be nothing to stop him from obtaining an infinite series of additional patents for any of the infinite additional types of property interests that he could think of. Mr. Graf argues in his reply brief that the invention must operate differently because of those property interests and that it would operate differently if it were used, for example, I think his examples were jewelry and automobiles were the items whose value is being calculated. But there's nothing in the claims that makes that the case. There's no formula that's at all relevant that in any way depends on the type of interest that's recited. These claims are so broad and so general that Mr. Graf could, in fact, simply substitute out his property interests with jewelry or automobiles or an infinite variety of tangible and intangible items and submit a patent or submit an application if there wasn't a requirement that when this type of additional limitation is asserted, it has to have some type of functional relationship to the underlying. It's not just a matter of claim construction. You read the specification. You get to a claim that talks about property, and you know what property has been described to relate to. Yes, and especially if this were something akin to a functional claim, but Mr. Graf has never argued that it is. And frankly, he's never pointed to anything in his specification, even if you could ignore the formula or algorithm in the claims and simply rely on the specification. Is there a rejection for undue breadth or lack of specificity or whatever? No, the board— But that's what you're arguing now, I gather. The fact that the claims are broad relates to the fact that they have no functional relationship to the recited property interests. But Mr. Graf points to nothing anywhere in the specification that does supply that formula, that process. So if claims this broad, simply inputting data, calculating a value, and outputting a result were sufficient— I don't understand your position on the absence of a functional relationship. Is this something that has been extracted from the defunct printed matter doctrine? There are sequential steps. These claims aren't that different from the sort of claims that we see all the time. Well, the principal authority the director relies on is King Pharmaceuticals, which is only four years old. We'd certainly hope that case isn't defunct yet. But again, so King Pharmaceuticals involved the steps of a process of administering the drug metaxalon, a muscle relaxant. And that process itself was obvious. And the recited additional limitation was informing the patient about the increased bioavailability of the drug when it's taken with food. And the analysis the board engaged in to determine there wasn't a functional relationship between the informing limitation and the underlying process of administering the drug was to ask if one depends on the other. And the board concluded these administering steps in no way depend on the informing limitation. And conversely, the limitation of informing the patient about the bioavailability of the drug when it's taken with food. You're telling us the closest art that the board is relying on is in pharmaceutical art? King Pharmaceuticals is a pharmaceutical case. The printed matter cases themselves obviously aren't. It seems to me like a dramatic concession of patentability of computer manipulated processes. You know, frankly, Mr. Graf cites nothing about computer implementation, for example, of these claims that would make it that would exempt these these types of claims from this principle that that you have to have a functional relationship to this additional limitation. This thing that's argued is that I'll concede this is an unusual case. This does not come up very often. Again, in a typical case, when people claim a computer or Internet implemented process, they recite that process in a series of steps and that series of steps implemented by the computer clearly relates to the underlying business method or idea or whatever it is they're doing in the computer. And the office is forced to analyze, is the process itself obvious or patent eligible? And are the computer implemented steps sufficient to impart eligibility? But in this case, we don't even reach those questions because there's simply no relation between the two. There is no algorithm or formula or anything that would impart a functional relationship between the limitation and the conceitedly obvious underlying process. I'm having trouble getting my hands around this notion of exactly what the functional relationship needs to be. Let me ask the question this way. Do you think that the patented issue in Alice would have been subject to the analysis that you're providing us? And if not, why not? I'm not as familiar with the exact operation of the invention in that case as I wish I were now, but I believe that one actually would survive. Again, although it was an abstract idea, the programming and the steps did depend on the intermediated settlement, I believe was the issue. And similarly, do you think the hedging? From my recollection, there is even hazier. But yes, you did have steps that clearly related to the thing that you're doing. Here, the problem you're seeing is that this is merely saying calculate valuation. And calculating valuation, you say, is not functionally related to the respective real estate interests that are otherwise recited. Exactly, Your Honor. If I could try perhaps a better illustration that might capture this principle. Imagine, for example, that the claims were directed towards calculating the area of the circle. And you have that limitation in the same computer-implemented inputting, calculating, and outputting steps. And then you have the formula for the area of the circle, pi times the square of the radius. And so the claims would determine the radius of the circle, input that into the computer. The computer is programmed to take the square of the radius, multiply it by pi, and outputting that area of the circle. Then you would meet the functional relationship test. You would have these computer-implemented claims that depend on the circle. Isn't that what Graff does? No, he does not, Your Honor. He didn't invent the formula for the area of the circle. And he doesn't claim to have invented the formula for the risk that's being evaluated for the separation of components. Your Honor, he can't claim to have invented the formula because he doesn't even recite the formula. The equivalent invention for what Graff claims would be if you just said calculate the area of the circle, had inputting, calculating, and outputting, and that's it. No formula, no steps. But when you do have that formula, to return to the circle analogy, the steps would depend on the circle. They would be uniquely suitable to that. If you invented the formula, but the formula was invented 5,000 years ago. I'm not saying that that particular invention wouldn't fail other requirements of patentability. But as a matter of an illustration, it shows the difference between the type of invention that meets this sort of preliminary functional relationship requirement and what we have at issue here. What Graff claims is the equivalent of just saying a circle, input data, calculate an output, and come up with the area. But you could substitute triangle or square or any other geometric object for his claims because there's no... Why isn't it just indefinite? Different conditions for patentability sometimes overlap. But the issue of definiteness wasn't considered by the Board and hasn't been briefed. There was a 112 rejection by the Board that was overturned, right? Yes, and that was for a different issue. I believe it was a 112-2, so it was differentiation between the claims, I believe. But that hasn't... that was overturned by the Board and is no longer at issue. Any more questions for Mr. Mattel? Any more questions? Okay, thank you, Mr. Mattel. Thank you. Okay. Senator, you have your rebuttal time. I have nearly no time, Your Honor, so I'll just make a couple quick points. First of all, a broadly stated algorithm is still an algorithm. And the claims of the instant appeal expressly recite controlling the processor to manipulate the input signals to compute evaluation. That's a broadly stated algorithm. So how is that... I mean, I'm having a hard time with that. How is that an algorithm? I mean, yes, it's broadly stated. It's amazingly broadly stated. So how do you control the computation? Well, Your Honor, I probably have to answer that question with the specification. If you go back to the specification, I don't have the Joint Appendix pages for this. Figure 5 of the application, which is like figure 5 plus figures 5A to 5E, include page after page of the specific algorithm that is being used to do this evaluation. It's very complex, and the problem is the nature of the algorithm changes with the type of property that it's evaluated. But this claim would read on any algorithm that is used to differentiate and assess the value of the interest in real property, right? Not just the ones in the respect. Not any interest in real property, but the specific interest in real property. Yes, that's correct. Primary and secondary. Only one of the primary and secondary. But if it did both, then it would have done the one. No, Your Honor. That's the point of the invention, if you will. If you do both at the same time, you're basically... As long as you segregate them. Yeah, I'm sorry. You do each of them. I misunderstood, Your Honor. Absolutely. But any algorithm whatsoever, even if somebody came up with a far superior algorithm to the one that you've disclosed, would be within the reach of the claim. That's correct, Your Honor. The solicitor ignores in-rate OCI, which holds that the starting materials of a method can contribute to patentability. And I think that's important because what the patent office is effectively doing is totally disregarding the data that is being processed, which affects the way that data must be processed and is recited as being processed. And the last point I want to make, Your Honors, is that the patent office's own position is inconsistent. On the one hand, it asks you to disregard any reference to what the data means. And on the other hand, in the board's own decision, they refer to the data as property data signals. And so it's our position that the claim is directed to the evaluation of a specific type of property with specific property data signals. It's the patent office's position that any property evaluation falls within the scope of the claim. And that's not what the claim language says. And that's not what the inventors invent and sought to be patented. And it shouldn't be disregarded under an obviousness rejection. Is there any questions, Your Honors? Okay. Thank you, Mr. Mutter. Thank you very much. The case is taken under submission.